UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                      NO. 02-304

BRYAN NELSON                                SECTION: "J"

## ORDER AND REASONS

Before the Court is a *Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582* **(Rec. Doc. 514)** filed by Bryan Nelson. The United States of America opposed the motion (Rec. Doc. 529), and Mr. Nelson filed a reply memorandum (Rec. Doc. 530). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

In August of 2006, Bryan Nelson pleaded guilty, pursuant to a plea agreement, to three counts that were charged in a third superseding indictment. Count One charged him with conspiracy to use a firearm in connection with a carjacking. Count Ten charged him with carjacking that resulted in murder, and in Count Eleven, Mr. Nelson was charged with using a firearm to commit a crime of violence that resulted in murder. Prior to sentencing Mr. Nelson, the Court calculated the sentencing guidelines, which called for a minimum of 360 months up to life imprisonment. On December 1, 2006, Petitioner was sentenced to life imprisonment on Counts Ten and

1

Eleven and a term of two hundred and forty (240) months on Count One, all to be served concurrently. (Rec. Doc. 411).

In 2020, Petitioner filed for post-conviction relief under 28 U.S.C. § 2255 (Rec. Doc. 470), which the Court denied (Rec. Doc. 475). Most recently, Mr. Nelson filed the instant motion for sentence reduction under 18 U.S.C. § 3582, which is commonly known as the compassionate release statute.

## LEGAL STANDARD

"A court, on a motion by the [Bureau of Prisons ("BOP")] or by the defendant after exhausting all BOP remedies, may reduce or modify a term of imprisonment, probation, or supervised release after considering the factors of 18 U.S.C. § 3553(a), if 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Chambliss*, 948 F.3d 691, 692–93 (5th Cir. 2020) (quoting § 3582(c)(1)(A)(i)). To meet the exhaustion requirement, a defendant must submit a request to "the warden of the defendant's facility" for the BOP "to bring a motion [for compassionate release/sentence reduction] on the defendant's behalf." § 3582(c)(1)(A). If the request is denied, the defendant must pursue and exhaust "all administrative rights to appeal." *Id.* Alternatively, the requirement is considered satisfied after "30 days from the receipt of such a request by the warden." *Id.*

Once a defendant has exhausted his administrative remedies, the Court may then reduce the defendant's term of imprisonment if it finds that extraordinary and compelling reasons warrant a sentence reduction. § 3582(c)(1)(A)(i). This reduction must be consistent with applicable policy statements of the Sentencing Commission.

2

§ 3582(c)(1)(A). Section 3582(c)(1)(A)(i)'s use of "extraordinary and compelling" captures "the truly exceptional cases that fall within no other statutory category" and sets "an exceptionally high standard for relief." *United States v. McCoy*, 981 F.3d 271, 287–88 (4th Cir. 2020). The defendant has the burden to demonstrate the extraordinary and compelling reasons supporting his release. *See United States v. Washington*, No. 16-19, 2020 WL 4000862, at *3 (E.D. La. July 15, 2020) (Morgan, J.). The U.S. Sentencing Guidelines provide that a reduction should be granted only if the "defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(a)(2) (p.s.).[1] If the Court grants a sentence reduction, it may impose a term of supervised release with conditions, including home confinement, "that does not exceed the unserved portion of the original term of imprisonment." § 3582(c)(1)(A).

## **DISCUSSION**

In its opposition to Mr. Nelson's motion, the Government contends that Nelson has failed to exhaust his administrative remedies under the compassionate release statute. The Government acknowledges that Mr. Nelson included with his motion a letter to the Warden requesting that the BOP bring a motion on his behalf, but the Government also argues that "Nelson has not demonstrated that the Warden received his request and that it was denied by the Warden." (Rec. Doc. 529, at 4). Mr. Nelson replies that he complied with the statute because more than thirty (30) days elapsed

---

[1] Policy statements are binding in § 3582(c) proceedings. *United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011).

after he submitted the letter without a response from the Warden. The Court agrees with Nelson in this regard and will therefore consider his motion on the merits.

Under 18 U.S.C. § 3582(c)(1)(A), as modified by Section 603 of the First Step Act, a sentencing court may reduce an imposed sentence upon a showing of either extraordinary and compelling reasons or the following: that the defendant is at least 70, has served at least 30 years in prison, and is no longer a danger to any other person or his community. Because the second situation does not apply to Mr. Nelson, he must demonstrate that there are extraordinary and compelling reasons for the Court to reduce his sentence, which, again, is "an exceptionally high standard for relief." *McCoy*, 981 F.3d at 288. Further, "Congress has not defined what constitutes 'extraordinary and compelling reasons' for a sentence reduction[.]" *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021).

The Sentencing Commission, however, provided six categories of extraordinary and compelling reasons in its corresponding policy statement: (1) medical conditions; (2) advanced age; (3) family circumstances; (4) physical or sexual abuse, under certain conditions, while incarcerated; (5) other reasons that "are similar in gravity" to the previous four; and (6) an unusually long sentence. U.S.S.G. § 1B1.13(b) (p.s.). Nelson does not argue that his circumstances warrant a sentence reduction due to medical conditions, advanced age, family circumstances, or abuse. Therefore, the Court must determine whether the other reasons he puts forward constitute extraordinary and compelling reasons to justify a reduced sentence.

Nelson urges the Court to grant his motion for a sentence reduction based on the following reasons, considered in conjunction with one another: (1) his youth at the time he committed the offenses to which he pled guilty; (2) his rehabilitation and moral development while in prison; (3) the severity of his sentence and what he claims is the "excessive" time he has already served; and (4) "the fact that [he] was under restricted circumstances in light of the COVID-19 pandemic." (Rec. Doc. 514, at 2–3). Mr. Nelson does not explain his reasoning concerning the COVID-related restrictions, but throughout his motion, he does focus on his documented intellectual disability. Accordingly, the Court will address Mr. Nelson's argument concerning his intellectual capacity but will not consider the COVID-related restrictions, which would not constitute an extraordinary and compelling reason because such restrictions would have applied to all incarcerated people at Mr. Nelson's facility.

First, Mr. Nelson argues that the Court should reduce his sentence because he was nineteen at the time he committed the violent crimes to which he pleaded guilty. Further, he contends (1) that the life sentence imposed when he was nineteen will ensure that he dies in prison, (2) that this sentence is "longer than necessary . . . to achieve the objectives that a sentence be sufficient but not greater than necessary, to achieve the goals of sentencing as spelled out in 18 U.S.C. § 3582," and (3) that "[t]here are mitigating factors in this case that the Court could not previously consider." *Id.* at 4.

Mr. Nelson describes an "indisputably chaotic" childhood characterized by poverty, neglect, upheaval, and abuse. *Id.* His father was absent, and he says that his

5

mother was an alcoholic who frequently disappeared for days at a time. Mr. Nelson would like for the Court to consider these mitigating factors now, as he claims that the Court could not consider them at the time of his sentencing. First, the Court is deeply sympathetic to Mr. Nelson's traumatic upbringing, but it does not constitute an extraordinary and compelling reason to reduce his sentence. Furthermore, the Court carefully considered these mitigating factors prior to imposing a sentence of life imprisonment. *See, e.g.*, Rec. Doc. 460, at 46–48.

Mr. Nelson also cites several cases in which courts have granted sentence reductions to defendants based on their youth at the time they committed the offenses, but these cases are distinguishable from Mr. Nelson's. For example, Nelson relies on *United States v. Glynn*, in which the Southern District of New York reduced Chaz Glynn's sentence from life imprisonment to thirty-five (35) years. *United States v. Glynn*, No. 06-cr-580, 2022 WL 562652, at *1 (S.D.N.Y. Feb. 24, 2022). Prior to his arrest, Glynn led a unit of the Bloods gang that was engaged in the distribution of crack cocaine and "acts of violence" in furtherance of their gang activity. *Id.* In 2008, Glynn was convicted of murder in aid of racketeering, murder in connection with a drug conspiracy, and the use of a firearm in relation to a drug trafficking crime because he directed gang members to commit a shooting that resulted in the murder of a rival and the attempted murder of another man. *Id.* at *2. Roughly twenty-two years after Glynn began his term of incarceration, the court decided to reduce Glynn's sentence based on a combination of factors it considered extraordinary and compelling, namely Glynn's chronic kidney disease in conjunction with his

6

demonstrated rehabilitation and his relatively young age at the time of the offenses. *Id.* at *4.

Unlike Glynn who had chronic kidney disease, Mr. Nelson has not presented any health issues or other extraordinary and compelling reasons that would justify a sentence reduction. Further distinguishing Glynn's case from Mr. Nelson's, Glynn ordered the killings of two people but did not participate, whereas Mr. Nelson was the shooter who killed Christopher Briede and would have killed Amy Briede had the gun not malfunctioned. For these reasons, the Court finds Mr. Nelson's reliance on *Glynn* unavailing.

Mr. Nelson also cites to *United States v. Espino*, in which the United States District Court for the District of Kansas reduced the defendant's sentence from life to thirty years. *United States v. Espino*, No. 03-20051-08, 2022 WL 4465096, at *1 (D. Kan. Sep. 26, 2022). In that case, however, the court emphasized not only Espino's "young age at the time of his offense," but also, and more importantly, the "*overwhelming* evidence of defendant's *outstanding* rehabilitation and reformation while in custody." *Id.* at *2 (emphasis added). The court concluded that Espino's disciplinary record while incarcerated was "exceptionally rare." *Id.* at *4. Most significantly, the court highlighted that Espino had included over thirty letters "from corrections officers, teachers in the BOP, religious services employees in the BOP and other inmates who all express enthusiastic support for defendant." *Id.* at *3. The court considered these recommendations particularly valuable and stated that "the unbiased letters from prison staff members who have spent countless hours with

7

defendant over the last number of years are truly *remarkable* in the court's opinion." *Id.* (emphasis added). Taken together with the life sentence imposed on Espino, the court found these were extraordinary and compelling reasons to grant Espino's motion for a sentence reduction. *Id.* at *4.

In this case, Mr. Nelson has also provided evidence of his rehabilitation while incarcerated. First, he attached his individualized needs plan to his motion for a sentence reduction, and Mr. Nelson's program review includes a list of the educational and rehabilitational programs that Mr. Nelson has completed while incarcerated. Furthermore, Mr. Nelson attached eight letters of support from various family members, his fiancée, and a member of the New Zion Temple church family who has stayed in touch with Mr. Nelson. The Court commends Mr. Nelson for the opportunities he has taken to improve himself and his life. Additionally, the supportive family members and friends Mr. Nelson has in his life speak highly of him. However, neither the rehabilitation Mr. Nelson has undergone nor the letters from family and friends rise to the level of an extraordinary and compelling reason that would warrant a sentence reduction.

To support his motion, Mr. Nelson also points to emerging neuroscience and the Supreme Court's decision in *Miller v. Alabama*, where it held that a mandatory life sentence without the possibility of parole for a juvenile constitutes "cruel and unusual punishment" and hence violates the Eighth Amendment. *Miller*, 567 U.S. at 465. The *Miller* Court reasoned that mandatory life sentences prevent sentencing courts from considering the "mitigating qualities of youth." *Id.* at 476 (quoting

*Johnson v. Texas*, 509 U.S. 350, 367 (1993)). The Court also relied on science showing that juvenile brains are not fully developed, and therefore, "juveniles have diminished culpability." *Id.* at 471.

While it is true that Bryan Nelson was only nineteen years old when he committed the violent crimes he was charged with, including the murder of Christopher Briede, the Supreme Court's decision in *Miller* applies only to juveniles, and Mr. Nelson had reached the age of majority when he committed these offenses. Moreover, Mr. Nelson's life sentence was not mandatory, but instead, the Court, in its discretion, carefully considered Mr. Nelson's background, his intellectual capacity, and the nature of the crimes he had committed to arrive at the sentence of life imprisonment. The Court finds that Mr. Nelson has not carried his burden to demonstrate an extraordinary and compelling release for a sentence reduction, so the analysis could end here. However, the Government claims that the sentencing factors in 18 U.S.C. § 3553(a) also counsel against Mr. Nelson's early release. These sentencing factors include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a).

The Government contends that Mr. Nelson "committed an especially heinous and violent crime" when he murdered Christopher Briede. (Rec. Doc. 529, at 9). Nelson and two other young men saw the Briedes walking to their car outside their home when the three men decided to block them in the driveway. At this point, Nelson and his co-defendant Darryl Franklin brandished a shotgun and ordered Christopher and Amy Briede into their home after stealing Amy's purse. Nelson and Franklin forced Christopher Briede to help them unplug electronic devices, and then Nelson took Amy Briede to the ATM where he withdrew $300, the maximum amount allowed by the bank. After returning to the Briedes' home, Nelson and Franklin ordered the couple to go into the bathroom, lock the door, and not to call the police. Mr. Nelson had the power to end the Briedes' nightmare here, but instead, a few minutes later, he and Franklin forced the bathroom door open and ordered the Briedes to come out and lie down on the floor. Nelson directed Franklin, who was holding the shotgun, to "go ahead," but for whatever reason, Franklin refused, at which point Nelson grabbed the gun from him and shot Christopher Briede. He also turned the gun on Amy and pulled the trigger, but the gun jammed. Nelson and Franklin exited the house and stole the Briedes' car before leaving.

The nature and circumstances of this offense are harrowing. Simply put, they forcefully weigh against a sentence reduction for Mr. Nelson, and they call into question whether Mr. Nelson would pose a danger to the safety of other individuals and his community if released. Furthermore, granting a sentence reduction would undermine the need for the sentence to reflect the seriousness of the offense and to

provide just punishment. As the Government notes, the "grant of compassionate release here would effectively reduce the defendant's sentence from life to approximately 23 years." (Rec. Doc. 529, at 10). The Government also maintains, and the Court agrees, that a sentence reduction for Mr. Nelson would set a dangerous precedent because it would not afford adequate deterrence to the most serious criminal conduct there is: murder.

Accordingly, based on the totality of the circumstances, the Court concludes that Mr. Nelson's motion for a sentence reduction pursuant to 18 U.S.C. § 3582 should be denied. Mr. Nelson has not met his burden of demonstrating an extraordinary and compelling reason for the Court to grant a sentence reduction, and the § 3553(a) factors also weigh against compassionate release.

The Court applauds Mr. Nelson for the progress he has made while incarcerated and sincerely hopes that he will continue to seek out opportunities to better himself and his community.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Bryan Nelson's *Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582* **(Rec. Doc. 514)** is **DENIED**.

New Orleans, Louisiana, this 27th day of July, 2026.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

11